RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0399p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MICHAEL J. RENDON,

*Petitioner,*

*v.*

No. 04-4229

TRANSPORTATION SECURITY ADMINISTRATION,

*Respondent.*

_____

On Petition for Review of an Order from the
Transportation Security Administration.
No. 2002GL750103.

Submitted: September 16, 2005

Decided and Filed: September 22, 2005

Before: KENNEDY, COOK, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:** Michael J. Rendon, Solon, Ohio, for Petitioner. Joshua Waldman, Thomas M. Bondy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

_____

KENNEDY, Circuit Judge. Petitioner Michael Rendon appeals from the Transportation Security Administration Decision Maker's order upholding the Administrative Law Judge's decision finding that Petitioner had interfered with an airport screener in the performance of his screening duties in violation of 49 C.F.R. § 1540.109. This regulation prohibits any person from interfering with, assaulting, threatening, or intimidating screening personnel in the performance of their screening duties. Petitioner argues that this regulation, as applied, violated his First Amendment right to freedom of speech. Petitioner further asserts that the statute is both overbroad and unconstitutionally vague.

### BACKGROUND

On July 27, 2002, Michael Rendon went to Cleveland Hopkins International Airport to board a scheduled flight. Rendon presented himself for screening at the security checkpoint, entered a walk-through metal detector, and set off the alarm. The screener responsible for screening those who passed through the metal detector that Rendon went through, Richard Pindroh, asked Rendon to step-aside and wait for the screener operating the hand-wand to come over and hand-wand him.

1

Rendon then informed Pindroh that he believed it was his watch that caused the metal detector to go off. Rendon took his watch off and went to walk back through the metal detector. Pindroh put his arm up to stop Rendon from walking back through the metal detector and informed him that, once he went through the metal detector, he could not go back through, but rather must wait to be hand-wanded. Rendon, who was anxious to catch his plane, which was leaving shortly, suggested that this was "bullshit." He then asked Pindroh "is this your rule or is this the rule of the airport," referring to the rule prohibiting him from going back through the metal detector. Pindroh informed Rendon that it was a rule developed by the security company he worked for and the airport. As Rendon waited to be hand-wanded he became, understandably, more anxious about catching his flight, but also more belligerent toward the screener, Pindroh. For instance, Rendon admits exclaiming, while Pindroh attempted to continue screening those walking through the metal detector, "shit, man, can't you get someone over here." The government introduced three witnesses who all testified that Rendon loudly exclaimed, after being informed that he could not walk back through the metal-detector and while he was waiting to be hand-wanded, that "this was fucking bullshit." Pindroh replied, "Mr. Rendon, you do not have to use profanity towards me." Rendon then told Pindroh that if profanity bothered him, he was in the wrong line of work and that he should consider living in a bubble. Moreover, testimony was introduced that Rendon loudly replied to Pindroh that he had a First Amendment right to say what he wanted. To deal with Rendon's escalating loud and belligerent conduct, Pindrow had to stop his screening line and call over his supervisor. When Pindroh's supervisor arrived, Pindroh informed him that Rendon was being uncooperative, unruly, and using loud profanities. Rendon admits having taken offense to this characterization of his conduct. Rendon testified that in response to Pindroh's comment, in the attempt to argue the point, he loudly exclaimed that all he said was "shit." At this point, the police officer on duty at the screening area came over to the scene and removed Rendon from the screening area.

On July 18, 2003, TSA filed a Notice of Proposed Civil Penalty proposing to assess Rendon a $700 civil penalty for violation of 49 C.F.R. § 1540.109. A hearing was held before an ALJ, who found that Rendon had violated the regulation by interfering with an airport screener in the performance of his screening duties. This decision was upheld by the TSA Decision Maker. Rendon petitioned for review.

ANALYSIS

Petitioner Rendon argues that 49 C.F.R. § 1540.109, which prohibits interfering with, assaulting, threatening, or intimidating screening personnel in the performance of their screening duties, is, as applied, a content-based regulation in violation of his First Amendment right to freedom of speech. In arguing that this regulation is a content-based regulation as applied to his conduct, he first notes that passengers are entitled to ask screeners good-faith questions regarding the screening process. 67 Fed. Reg. 8340, 8344 (Feb. 22, 2002). He asserts that a passenger who asks a good-faith question would interfere with a screener in the performance of his duties since the screener would need to divert his attention to the passenger in order to address the question. He further asserts that a passenger who asks a good-faith question while using profanities would similarly interfere with a screener in the performance of his duties, since a screener would also need to divert his attention to address this passenger's question. However, he concludes, since the passenger who asks a good-faith question without using profanities would not be subject to the regulation's civil penalty, while a passenger who asks a good-faith question while using profanities would be subject to the civil penalty, then, in such a case, the passenger who uses profanities is being punished on the basis of the content of his speech (i.e., his use of profanities).

This reasoning is flawed for a number of reasons. First, a passenger who asks a good-faith question to a screener could not validly be found to have interfered with the screener in the performance of his duties, even though a screener may need to divert his attention to the passenger to address the passenger's question. Not only, as a matter of construction of the word "interfere",

would we find that a good-faith question could not be deemed to have interfered with a screener, but also the regulation's preamble specifically acknowledges that such questions are permissible. 67 Fed. Reg. 8340, 8344 ("This rule does not prevent good-faith questions from individuals seeking to understand the screening of their persons or their property."). Furthermore, the asking of a good-faith question while using profanities would also not by itself be sufficient for a finding that a screener has been interfered with in the performance of his duties. Similarly, a passenger who grumbles, even if the grumbling includes profanities, would not be found to have interfered with a screener in the performance of his duties. Indeed, Pindroh, the screener in this case, testified that he frequently hears passengers grumbling in line about how long the screening process is going to take and whether the screeners can hurry up the process, and notes that such grumbling is just normal talk from the customers.

Petitioner's conduct in this case, however, cannot be characterized as simply asking a good-faith question while using profanities or as grumbling about not being allowed to walk back through the metal detector or the delay in being hand-wanded. Rather, Petitioner interfered with the screener in the performance of his duties by actively engaging the screener with loud and belligerent conduct, and, after being asked not to use profanities, by exclaiming that the screener should be in a different line of work, that he should live in a bubble, and that it was a free country in which he could say what he pleased. Due to the escalating loud and belligerent nature of Petitioner's conduct directed at the screener, the screener needed to shut down his line and call over his supervisor. Thus, Petitioner's conduct interfered with the screener's duty to both thoroughly screen passengers and to do so in an efficient manner.

Since 49 C.F.R. § 1540.109's civil penalty was not imposed simply because Petitioner used profanities, it was not, as Petitioner contends, a content-based regulation as applied. Rather, the regulation (on its face and as applied) is a content-neutral regulation, "as it is justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *see also United States v. Hicks*, 980 F.2d 963, 971 (5th Cir. 1992) (recognizing that statute that prohibited passengers from intimidating any flight crew member or flight attendant so as to interfere with the performance of their duties did not discriminate against protected profanity or vulgarity, but rather incidentally regulated speech irrespective of its content); *CISPES v. FBI*, 770 F.2nd 468, 474 (5th Cir. 1985) (holding that statute that criminalized the act of willfully intimidating a foreign official in the performance of his duties did "not permit the government to discriminate on the basis of the content of expression. To the extent that it applies . . . to protected conduct, it is not a restriction on any particular message. It merely proscribes actions of a[n] . . . intimidating nature directed at any protected official").

A content-neutral regulation that has an incidental effect on speech is upheld so long as it is narrowly tailored to advance a substantial government interest. *Ward*, 491 U.S. at 796-98; *see also United States v. O'Brien*, 391 U.S. 367, 376-77 (1968). It is clear that this regulation serves a substantial government interest, as its purpose is to prevent individuals from interfering with screeners in the performance of their duties, which are to both ensure that those screened are not potentially carrying weapons and to conduct the screening of passengers as efficiently as possible. Moreover, it goes without saying that this regulation (prohibiting interfering with screeners) directly and effectively advances the government's interest in ensuring that screeners are not interfered with in the performance of their screening duties. *Ward*, 491 U.S. at 800. Finally, the regulation is narrowly tailored, as it does "not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id*. at 799. Rather, it regulates speech only in the narrow context of when that speech can reasonably be found to have interfered with a screener in the performance of the screener's duties.

Petitioner next contends that the regulation is overbroad as it regulates substantially more speech than the constitution permits to be regulated. He asserts that this regulation allows for

punishment "no matter what was said." Petitioner finds 49 C.F.R. § 1540.109 to be analogous to the statute that was found to be overbroad in *City of Houston v. Hill*, 482 U.S. 451, 467 (1987). The statute that was found to be overbroad in *Hill* prohibited speech that "in any manner ... interrupt[s] [a] policeman in the execution of his duty." *Hill*, 482 U.S. at 461.

A party challenging a regulation as overbroad has the burden "to demonstrate a realistic danger that the [regulation] will significantly compromise recognized First Amendment protections of individuals not before the Court." *City Council of Los Angeles v. Vincent*, 466 U.S. 789, 802 (1984). Moreover, the challenge will not succeed unless the law's overbreadth is shown to be substantial in relation to its legitimate scope. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). In light of this standard, we conclude that 49 C.F.R. § 1540.109 is plainly not overbroad. Unlike the statute found to be invalid in *Hill*, this statute only prohibits conduct (which, of course, in certain cases, such as this, may include speech) that *interferes* with screeners in the performance of their duties. That is, by using the term interfere, 49 C.F.R. § 1540.109 prohibits only that conduct which poses "an actual hindrance to the accomplishment of a specified task." *Fair v. Galveston*, 915 F. Supp. 873, 879 (S.D. Tex.) (distinguishing the use of the term "interrupt" from the narrower term "interferes"). Consequently, Petitioner has not demonstrated that 49 C.F.R. § 1540.109 is overbroad.

Finally, Petitioner has challenged the regulation as being, on its face, unconstitutionally vague. He asserts that, in his view, since an individual could get fined under this regulation for saying anything if a particular screener found what the individual said to be disruptive, a reasonable person could not tell what speech is prohibited and what is permitted. This argument is without merit. "In a facial challenge to the . . . vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman*, 455 U.S. at 494. "If the statute does not proscribe a 'substantial' amount of constitutionally protected conduct, a party may raise a ... vagueness challenge only if 'the enactment is impermissibly vague in *all* of its applications.'" *Hicks*, 980 F.2d at 972 (quoting *Village of Hoffman*, 455 U.S. at 495). As we discussed in connection with Petitioner's overbreadth challenge, the regulation does not reach a "substantial" amount of constitutionally protected conduct. Thus, because 49 C.F.R. § 1540.109 is not impermissibly vague in all its applications, Petitioner's vagueness challenge must fail.[1]

Since 49 C.F.R. § 1540.109, as applied, does not violate the Petitioner's First Amendment right to freedom of speech, nor is it unconstitutionally overbroad, we affirm the TSA Decision Maker's order upholding the ALJ's decision finding that Petitioner had interfered with a screener in the performance of his screening duties.

---

[1] Even if Petitioner had made an as-applied vagueness challenge to this regulation, it would have failed, for even though the terms of the regulation may not be defined with "meticulous specificity, . . . it is clear what the [regulation] as a whole prohibits." *Deja Vu of Cincinnati v. Union Township*, 411 F.3d 777, 798 (6th Cir. 2005) (quoting *Grayned v. City of Rockford,*, 408 U.S. 104, 110 (1972)).