Affirmed by published opinion. Judge GREGORY wrote the majority opinion, in which Judge DUNCAN joined. Judge WILKINSON wrote a dissenting opinion.
OPINION
GREGORY, Circuit Judge:
Aaron Tobey alleges he was retaliated against for exercising his First Amendment rights when at Richmond International Airport (RIC), Transportation Security Administration (TSA) agents and RIC police seized and arrested him for displaying the text of the Fourth Amendment to the United States Constitution on his chest. Seeking to vindicate his rights, Mr. Tobey brought an action in the United States District Court for the Eastern District of Virginia against the RIC police and TSA agents, alleging violations of his First, Fourth, and Fourteenth Amendment Equal Protection Clause rights. The TSA agents moved to dismiss the claims, asserting qualified immunity. The district judge sustained the motion as to the Fourth and Fourteenth Amendment claims, but denied the motion for the First Amendment claim. The TSA agents appeal the denial to this Court and are the only parties to this appeal. Because we find the facts as alleged by Mr. Tobey plausibly set forth a claim that the TSA agents violated his clearly established First Amendment rights, we affirm the district court’s decision.
I.
From the outset we must underscore that this case is before us on appeal from denial of a Fed.R.Civ.P. 12(b)(6) motion to dismiss. Therefore, the facts set forth are from the vantage point of Mr. Tobey, with all reasonable inferences drawn in his favor. See Jenkins v. McKeithen, 395 U.S. 411, 421-22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.1992).
A.
Following the September 11, 2001 terrorist attacks, Congress created the Transportation Security Administration. TSA is tasked with maintaining the security of commercial air travel. TSA agents screen and search airline passengers at airports, randomly selecting certain passengers for enhanced secondary screening. Under the then-current enhanced secondary screening policies, passengers had a choice of submitting to either an Advanced Imaging Technology (AIT) scan or a full-body pat down. The purpose of TSA’s procedures was limited to finding “explosives, incendiaries, weapons or other items and screening to ensure that an individual’s identity is appropriately verified and checked against government watch lists.” TSA Management Directive No. 100.4 (Sept. 1, 2009).
On December 30, 2010, Aaron Tobey was scheduled to fly from Richmond to Wisconsin to attend his grandfather’s funeral. Mr. Tobey waited until there was a short line at the TSA screening checkpoint and then commenced the screening process by presenting his boarding pass and identification to the pre-screening agent. Mr. Tobey proceeded to the conveyor belt area and placed his belt, shoes, sweatshirt, and other carry-on items on the conveyor. *384 Mr. Tobey was then diverted by Appellanb-Agent Smith from the standard metal detector used as the primary screening apparatus to the AIT scanning unit for enhanced screening.
In anticipation that he might be subjected to enhanced screening, Mr. Tobey had written the text of the Fourth Amendment on his chest as he believed AIT scanning was unconstitutional. Before proceeding through the AIT unit, Mr. Tobey calmly placed his sweatpants and t-shirt on the conveyor belt, leaving him in running shorts and socks, revealing the text of the Fourth Amendment written on his chest. Agent Smith advised Mr. Tobey he need not remove his clothes. Mr. Tobey calmly responded that he wished to express his view that TSA’s enhanced screening procedures were unconstitutional.
At this point, Agent Smith radioed for assistance. As commanded by her supervisor, Appellanb-Agent Jones, Agent Smith ordered Mr. Tobey to remain in front of the AIT unit. Agent Jones and unknown Appellant-Agent Doe then asked RIC police for assistance. At no point did Mr. Tobey refuse to undergo the enhanced screening procedures. Nor did he decline to do anything requested of him. In fact, Mr. Tobey alleges that he “remained quiet, composed, polite, cooperative and complied with the requests of agents and officers.”
RIC police officers Vann and Mason arrived on the scene and immediately handcuffed and arrested Mr. Tobey. None of the TSA agents informed RIC police of what occurred at the screening station, nor did RIC police ask. Officer Vann escorted Mr. Tobey to a side area and informed him he was under arrest for creating a public disturbance. Agent Doe searched Mr. To-bey’s belongings, removing unidentified items. Officer Mason then collected Mr. Tobey’s belongings with assistance from Agents Smith and Doe.
Mr. Tobey was then taken to the RIC police station where Officer Vann and other officers questioned Mr. Tobey and threatened him with various criminal sanctions. Mr. Tobey was eventually charged with disorderly conduct in a public place. See Va.Code Ann. § 18.2-415. The officers later released Mr. Tobey after consulting with an Air Marshal from the Federal Air Marshal’s Joint Terrorism Task Force. In total, Mr. Tobey was held for over an hour. Mr. Tobey boarded the plane without further incident. The Commonwealth Attorney for Henrico County subsequently dropped the disorderly conduct charge.
B.
On March 11, 2011, Mr. Tobey sued Agents Jones, Smith, and the RIC police officers under 42 U.S.C. § 1983 (state agents) and Bivens v. Six Unknown Named Agents for the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (federal agents), for depriving him of his (1) Fourth and Fourteenth Amendment Rights (Count One); (2) First and Fourteenth Amendment Rights (Count Two); and (3) Fourteenth Amendment Equal Protection Rights (Count Three).[1]
On June 27, 2011, Appellants Jones and Smith moved to dismiss all three claims. On August 30, 2011, the district court granted the motion with respects to Counts One and Three. In dismissing the Fourth Amendment claim, the court explained that: Tobey’s “bizarre” behavior *385 gave rise to further police inquiry; “[given the heightened security interest at airport security checkpoints ... it was eminently reasonable for Smith and Jones to seek assistance from the RIC police.” Tobey v. Napolitano, 808 F.Supp.2d 830, 850 (E.D.Va.2011).
The Equal Protection Clause claim was dismissed because the “complaint makes no reference to any other passengers who stripped off their clothes — much less passengers who began stripping down and continued to do so even after being told by a [TSA Agent] that it was unnecessary — or otherwise launched a protest inside the screening area.” Id. at 849.
The district court, however, declined to dismiss Mr. Tobey’s First Amendment claim. The court held that because there is a question of “whether the [TSA Agents] in fact radioed for assistance because of the message Plaintiff sought to convey or because of some other reasonable restriction on First Amendment activity in the security screening area,” dismissal on the basis of qualified immunity would be improper. Id. at 850.
On October 31, 2011, Appellants appealed the district court decision denying their motion to dismiss the First Amendment claim. Appellants argue that Mr. Tobey did not allege a facially valid First Amendment claim and even if he did, qualified immunity bars such a claim because they did not violate a clearly established constitutional right.
II.
Qualified immunity “shield[s] [officials] from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.” Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); see also Saucier v. Katz, 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). To determine whether Mr. Tobey’s complaint should survive a qualified immunity-based motion to dismiss, we exercise our “sound discretion” in following the two-step inquiry laid out in Saucier by analyzing one, whether a constitutional violation occurred, and two, whether the right violated was clearly established. See Pearson, 555 U.S. at 236, 129 S.Ct. 808; Saucier, 533 U.S. at 200, 121 S.Ct. 2151; Melgar v. Greene, 593 F.3d 348, 353 (4th Cir.2010). We review a qualified immunity-based motion to dismiss de novo. Melgar, 593 F.3d at 353.
A.
 As a threshold matter, before addressing whether Mr. Tobey asserted a plausible First Amendment violation in his complaint, we must correct an erroneous conclusion reached by the district court. Reviewing the record afresh, we find that the district court erred in concluding Mr. Tobey failed to plead Appellants in some way caused his arrest. Tobey v. Napolitano, 808 F.Supp.2d at 850. The district court opined that Mr. Tobey’s complaint “is devoid of any facts suggesting that [Appellants] — neither of whom are law enforcement officers with the power of arrest — made any such assertion or otherwise indicated to the RIC police that Plaintiff should be arrested.” Id. The district court further noted that “Plaintiffs counsel conceded that the Complaint ‘doesn’t say directly that [Plaintiffs arrest] was at the instruction of the TSA.’ ” Id. at n. 22 (citing Tr. 27:11-12). Fortunately for Mr. Tobey, he was not required to state these precise magical words in order to plausibly plead that Appellants caused his arrest. The Supreme Court reiterated in Bell Atlantic Corp. v. Twombly that a “formulaic recitation of the elements of a cause of action will not do.” 550 U.S. 544, *386 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing Papasan v. Attain, 478 U.S. 265, 268, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Allegations have facial plausibility “when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
As the Supreme Court explained, Section 1983 (and by association Bivens) anticipates that a government official will be “responsible for the natural consequences of his actions.” Malley v. Briggs, 475 U.S. 335, 344 n. 7, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (quoting Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)); see also Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir.2000) (“A government official’s liability for causing an arrest is the same as for carrying it out.” (internal quotation marks omitted)). It is an undoubtedly natural consequence of reporting a person to the police that the person will be arrested; especially in the scenario we have here, where TSA and RIC police act in close concert. So long as Mr. Tobey’s complaint rendered it plausible that Appellants helped effectuate his arrest, the district court should have factored the arrest into its decision as to whether Mr. Tobey alleged plausible Bivens claims against Appellants.
When looking at Mr. Tobey’s complaint and drawing all reasonable inferences in his favor, it is logical to assume that Appellants had a hand in his arrest. Mr. Tobey announced to Appellants his desire to peacefully protest TSA screening measures, and at that point, Appellants “radioed for assistance.” Immediately thereafter, RIC police “seized and handcuffed” Mr. Tobey from behind without further inquiry. It is reasonable to infer that whatever Appellants told RIC police caused Mr. Tobey’s arrest. This inference is bolstered by the fact that Appellants silently stood by and watched RIC police arrest Mr. Tobey. The fact that Appellants do not have the power of arrest does not hurt Mr. Tobey, but helps him, as one can infer that Appellants radioed RIC police to arrest Mr. Tobey as they could not do it themselves. It may bear out after further discovery that Appellants radioed for assistance for innocuous reasons. It may also bear out that Appellants indicated to RIC police that they should arrest Mr. Tobey. Mr. Tobey’s complaint raises a plausible inference that Appellants caused his arrest, and thus it was improper for the district court to find otherwise at the 12(b)(6) phase of litigation. The district court should have considered the entire course of events up to arrest when deciding whether to dismiss Mr. Tobey’s Bivens actions against Appellants.
With that said, for the purposes of reviewing the plausibility of Mr. Tobey’s First Amendment claim, we will assume that Appellants’ liability carries through to arrest, although further discovery may prove this not to be the case. Moreover, the district court’s reasoning as to why qualified immunity bars Mr. Tobey’s Fourth Amendment claim or why Mr. To-bey’s First Amendment claim survives a 12(b)(6) motion to dismiss has no sway on our decision, as both decisions were based in part on the erroneous conclusion that Appellants cannot be liable for Mr. Tobey’s arrest. Having clarified this initial matter, we can now look at the facts and allegations in Mr. Tobey’s complaint with unfettered freshness, as required by de novo review.
B.
 For Mr. Tobey’s First Amendment claim to survive a qualified immunity-based 12(b)(6) motion to dismiss Mr. *387 Tobey must have plausibly alleged in his complaint that his constitutional rights were violated. A cognizable First Amendment retaliation claim requires a plaintiff to show: (1) “that [plaintiffs] speech was protected”; (2) “defendant’s alleged retaliatory action adversely affected the plaintiffs constitutionally protected speech”; and (3) “a causal relationship exists between [plaintiffs] speech and the defendant’s retaliatory action.” Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685-86 (4th Cir.2000).
A complaint need only “give the defendant fair notice of what the ... claim is and the grounds upon which it rests.” Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotation marks omitted). A Rule 12(b)(6) motion to dismiss “does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.” Martin, 980 F.2d at 952. Appellants argue Mr. Tobey’s complaint did not adequately set forth a First Amendment claim, and therefore must be dismissed. We disagree.
Mr. Tobey’s complaint most certainly sets forth a valid First Amendment retaliation claim. In his complaint, Mr. Tobey alleges the Appellants violated his First Amendment rights by seizing him or causing his seizure, “without probable cause because of the message conveyed by [his] silent, nonviolent expression of objection to the TSA’s screening policies....” He goes on to state that the Appellants “engaged in content and/or viewpoint discrimination and deprived [him] of his fundamental right to engage in free speech ... and to engage freely in political expression as guaranteed by the First and Fourteenth Amendments to the United States Constitution.”
These legal conclusions are well supported by the facts laid out in Mr. Tobey’s complaint. Mr. Tobey alleges that he removed his sweatpants and t-shirt to reveal the text of the Fourth Amendment on his chest. Appellants told him that he did not have to remove his clothing, but he responded that he wished to express his views that the screening process was unconstitutional. Immediately after this assertion, Appellants engaged RIC police officers to arrest him.[2] They handcuffed and seized him with no questioning and without telling him why he was being arrested.
In short, Mr. Tobey’s complaint satisfies all three elements of a First Amendment claim as he alleges: (1) he engaged in constitutionally protected non-violent protest; (2) he was seized as a result of the protest; and (3) the temporal proximity of his peaceful protest and his arrest, unsupported by probable cause, shows Appellants engaged in impermissible retaliation. Cf. Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir.2001) (observing that “the timing of the search raises an inference of retaliatory motive”). The factual allegations in the complaint, viewed as a whole, have “facial plausibility” that “allow[ ] the court to draw reasonable inference that the defendantfs] [are] liable for misconduct alleged.” Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This is not a case where the complaint is merely “threadbare recitals of a cause of action’s elements supported by mere conclusory statements.” Id. These factual allegations, when viewed as accurate, adequately support Mr. Tobey’s legal assertion that he was unlawfully seized in *388 retaliation for exercising his protected First Amendment rights.
Appellants contend that Mr. Tobey has not pled a cognizable First Amendment claim because their actions were “reasonable” given Mr. Tobey’s “bizarre” and “disruptive” conduct. This argument stems from the Supreme Court’s ruling in International Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992), in which the Court held that the government can impose reasonable restrictions on speech in an airport given that it is a nonpublic forum. Id. at 683, 112 S.Ct. 2701.
Even conceding that Mr. To-bey’s behavior was “bizarre,” bizarre behavior alone cannot be enough to effectuate an arrest. If Appellants caused Mr. Tobey’s arrest solely due to his “bizarre” behavior, Appellants’ cannot be said to have acted reasonably. This is especially the case given that the First Amendment protects bizarre behavior. See Spence v. Washington, 418 U.S. 405, 410, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (per curiam).[3] Woven into our constitutional freedoms is the belief in autonomy and the celebration of difference. For us to hold today that it is reasonable to cause an arrest due to bizarre behavior and nothing more would violate the most basic tenents of our Constitution.
Further, contrary to Appellants’ assertions, bizarre does not equal disruptive. Whether Mr. Tobey was in fact “disruptive” is a disputed question of fact at this juncture. Appellants seem to think that removing clothing is per se disruptive. We beg to differ. Passengers routinely remove clothing at an airport screening station, and in fact are required to do so by TSA regulations. It is just as reasonable that Mr. Tobey calmly taking off his t-shirt and sweatpants caused no disruption at all, especially since he was never asked to put his clothes back on. And because we are reviewing the facts at the 12(b)(6) phase of litigation, we must view the facts in the light most favorable to Mr. Tobey. It could be perfectly true that after further factual development a court could find that Appellants acted reasonably given Mr. To-bey’s conduct. Perhaps Mr. Tobey took *389 off his shirt, twirled it around his head, and ripped off his pants with a dramatic flourish, indeed causing a great spectacle. However, we cannot, from this record at the 12(b)(6) stage, make this factual conclusion.
At bottom, we are not persuaded by the Appellants’ reasonableness argument. The question of reasonableness is a fact-intensive inquiry, going directly to the heart of the case. In Cornelius v. NAACP Legal Defense and Educational Fund, Inc., the Supreme Court held that the “reasonableness of the Government’s restriction [in] a nonpublic forum must be assessed in the light of the purpose of the forum and all the surrounding circumstances.” 473 U.S. 788, 809, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). Based on Mr. Tobey’s complaint, it is unclear whether Appellants’ behavior was reasonably motivated by Mr. Tobey’s “disruptive” conduct or unreasonably motivated by his protected protest. What is reasonable in this context, therefore, requires greater factual development and is better decided once discovery has been conducted. See Martin, 980 F.2d at 952; DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir.1995) (“[W]here there is a material dispute over what the defendant did ... it may be that the qualified immunity question cannot be resolved without discovery.”).
In a similar vein, Appellants maintain that Mr. Tobey cannot plead a First Amendment violation because the alleged misconduct was consistent with a lawful TSA response. Appellants make this claim without pointing to a single regulation or law that permits seizure and arrest for the removal of an outer-layer of clothing or prohibits the display of a peaceful, non-disruptive message of protest.
The relevant TSA regulations state that “no person may interfere with ... [TSA] screening personnel in the performance of their duties,” 49 C.F.R. § 1540.109; and “[n]o person may ... attempt to circumvent ... any security system, measure, or procedure,” 49 C.F.R. § 1540.105. Based on the facts alleged in his complaint, Mr. Tobey violated neither of these regulations. Although Appellants repeatedly mention Mr. Tobey’s “disruptive” behavior as the impetus for the arrest, Mr. Tobey specifically alleges that he did not circumvent security measures nor did he disrupt the screening process. Mr. Tobey attempted to submit to the enhanced screening procedures. He never violated an express instruction of the Appellants. In a sense, Mr. Tobey aided in Appellants’ search for contraband by removing his t-shirt and sweatpants — at this point there were very few places he could have been hiding anything. Mr. Tobey was simply showing Appellants what they sought to see by using the AIT scanning machine. There is nothing before the Court at the 12(b)(6) phase that indicates Mr. Tobey removing his sweatpants and t-shirt caused any interference, disruption, or delay, in violation of any TSA regulation.
Appellants seem to think the district judge’s finding of no Fourth Amendment violation controls our First Amendment analysis. As stated above, however, bizarre behavior alone is not enough to effectuate an arrest. See supra pp. 387-88. Furthermore, the district court’s Fourth Amendment holding is undermined by its erroneous conclusion that Appellants’ cannot be found liable for Mr. To-bey’s arrest. See supra pp. 385-87. Additionally, the idea that we are bound by the district court’s rationale violates the principle of de novo review. See Melgar, 593 F.3d at 353. De novo review mandates that we consider the complaint and nothing more, and draw all reasonable inferences therefrom in favor of Mr. Tobey. And as a practical matter, it would be *390 imprudent for us to base our decision on the district court’s Fourth Amendment findings given that the decision is not before us and eventually can be appealed. For us to base our holding on the reasoning of an interlocutory order would be nonsensical — akin to building a house on a lot comprised of quicksand. It is illogical for us to look at the district court’s Fourth Amendment findings given that Mr. Tobey still has the opportunity to appeal that decision; should the district court’s dismissal of Mr. Tobey’s Fourth Amendment claim be reversed, our holding today would be undermined. While we understand the First and Fourth Amendment claims are closely linked, to prejudice Mr. Tobey on the basis of an interlocutory order that he has not yet had the opportunity to appeal is untenable. See Baird v. Palmer, 114 F.3d 39, 42-43 (4th Cir.1997) (“[T]he collateral order doctrine does not confer appellate jurisdiction over an order dismissing claims against a defendant on the basis of qualified immunity, where other claims remain pending in the district court.”)[4]; see also 28 U.S.C. § 1291.
Therefore, the district court’s decision to dismiss Mr. Tobey’s Fourth Amendment claim is inconsequential to this Court’s finding that Mr. Tobey asserted a plausible First Amendment claim. Again, viewing the facts in the light most favorable to Mr. Tobey, we find that it is unsettled whether his behavior was in fact “disruptive” or that it was “eminently reasonable” to effectuate an arrest based on his conduct in spite of the text of the Fourth Amendment written on his chest.[5] Thus, Mr. Tobey’s First Amendment claim properly survives the motion to dismiss.
Appellants also raise the argument that Mr. Tobey’s complaint is deficient because it does not adequately allege that his arrest was caused by the message of protest he sought to convey. To be sure, causation is a requirement of a First Amendment retaliation claim. See Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir.1990). As we said in Huang, “[t]he causation requirement is rigorous; it is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that ‘but for’ the protected expression the [government official] would not have taken the alleged retaliatory action.” Id. What Appellants conveniently overlook, however, is that Huang was before the Court on appeal from a grant of summary judgment. Viewing all facts as alleged by Mr. Tobey as true, which is the posture we must take when reviewing a 12(b)(6) motion, we can infer causation based on the facts, as Mr. Tobey alleges the arrest was directly precipitated by his *391 constitutionally protected peaceful protest — Appellants did not take action until after he informed them that he wished to display his chest in order to express his views on the constitutionality of TSA screening measures. Again, it may turn out after further discovery that Mr. Tobey cannot meet this “rigorous” requirement, but without further discovery, we are unable and unwilling to speculate as to the outcome.
We are satisfied, therefore, that Mr. To-bey adequately set forth a plausible claim that his First Amendment rights were violated by Appellants.
III.
We must next decide whether Mr. Tobey’s First Amendment rights were clearly established. See Anderson, 483 U.S. at 638, 107 S.Ct. 3034. When deciding whether a right is clearly established, we ask “whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Henry v. Purnell, 652 F.3d 524, 534 (4th Cir.2011) (en banc) (quoting Saucier, 533 U.S. at 202, 121 S.Ct. 2151).
A.
A bedrock First Amendment principle is that citizens have a right to voice dissent from government policies. See Mills v. Alabama, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966) (“Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.”). This principle transcends forums, as the Supreme Court announced that “nondisruptive speech — such as the wearing of a T-shirt or a button that contains a political message may not be ‘airport related,’ but it is still protected speech even in a nonpublic forum.” Board of Airport Comm’rs of City of Los Angeles v. Jews for Jesus, Inc., 482 U.S. 569, 576, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987). Therefore, in a nonpublic forum such as an airport, a government official cannot “suppress expression merely because [they] oppose the speaker’s view.” United States v. Kokinda, 497 U.S. 720, 721, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (quoting Perry Educ. Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)); Arkansas Educ. Television Comm’n v. Forbes, 523 U.S. 666, 677-78, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998) (quoting Cornelius, 473 U.S. at 800, 105 S.Ct. 3439).
Our precedent bolsters the Supreme Court’s resounding pronouncements. We have held that “[i]t is well established that a public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right.” Trulock, 275 F.3d at 406 (citing Suarez, 202 F.3d at 685). We further declared that “the First Amendment prohibits an officer from retaliating against an individual for speaking critically of the government.” Id.
Taken together, it is crystal clear that the First Amendment protects peaceful nondisruptive speech in an airport, and that such speech cannot be suppressed solely because the government disagrees with it. Thus, Mr. Tobey’s right to display a peaceful non-disruptive message in protest of a government policy without recourse was clearly established at the time of his arrest.[6]
*392 B.
Appellants argue that because there is no case on-point detailing what is a reasonable restriction on speech in an airport screening area, Mr. Tobey’s constitutional rights cannot be said to have been clearly established. They argue the only binding precedent, Krishna, states “restrictions on speech [at airport terminals] ... need only satisfy a standard of reasonableness,” 505 U.S. at 677, 112 S.Ct. 2701, and that a general standard of “reasonableness” does not provide sufficient guidance as to the contours of constitutional rights. See Ashcroft v. al-Kidd, — U.S. -, 131 S.Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011) (“The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of the particular conduct is clearly established.”).
While reasonableness in and of itself may be an ineffective guide as to whether a right is “clearly established,” in this case there are clear constitutional parameters. It may be unclear as to what reasonableness entails in the abstract, but at a minimum, given well-established precedent, we know that it is unreasonable to effect an arrest without probable cause for displaying a silent, nondisruptive message of protest — which is what allegedly occurred here. Appellants even conceded at oral argument that it would have clearly been unlawful for them to seize Mr. Tobey if the text of the Fourth Amendment was printed on his t-shirt. We see no reason why the same clear principle should not apply here, as Mr. Tobey’s allegations amount to the factual equivalent.
Appellants cite Reichle v. Howards, — U.S. -, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) as supporting their argument that Mr. Tobey’s constitutional rights were not clearly established, but in doing so, miss the mark completely. In Reichle, an appeal from summary judgment, the Supreme Court found that it was not clearly established that a plaintiff could make out a cognizable First Amendment claim for an arrest that was supported by probable cause. Id. at 2097. Reichle does not apply here because Mr. Tobey specifically alleges that his arrest was not supported by probable cause, and “probable cause or its absence will be at least an evidentiary issue in practically all [ ] cases.” Hartman v. Moore, 547 U.S. 250, 265, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). At this stage in the litigation, of course, we must credit Mr. Tobey’s allegation that Appellants arrested or caused him to be arrested without probable cause. He has, therefore, satisfied the requirement in Hartman and Reichle to plead an absence of probable cause.
Appellants also cite Rendon v. Transportation Security Administration, 424 F.3d 475 (6th Cir.2005), as controlling authority that First Amendment rights in the screening area of an airport are not clearly established. This case is irrelevant to the inquiry at hand because in that case the Sixth Circuit grappled with the question of whether TSA Regulation 49 C.F.R. *393 § 1540.109 was constitutionally overbroad, or whether it violated the plaintiffs constitutional rights as applied. In Rendon, the plaintiff was being “uncooperative, unruly, and using loud profanities” and therefore was cited for violating TSA regulation 49 C.F.R. § 1540.109. 424 F.3d at 478. Rendon is factually distinct from what we have here. Mr. Tobey was peaceful, cooperative, and polite — this is presumably why he was never cited for violating TSA regulations. The TSA regulations are not at issue here.[7]
Given that peaceful, silent, nondisruptive protest is protected in a nonpublic forum, like an airport; that it is unequivocally clear that the government cannot effectuate an arrest for the display of a message of peaceful protest; and that Mr. Tobey’s arrest in this instance was allegedly not supported by probable cause — we find that Mr. Tobey’s rights at the time of his arrest were clearly established by decades-old precedent.
IV.
While the sensitive nature of airport security weighs heavily on the Court, protest against governmental policies goes directly to the heart of the First Amendment. The First Amendment symbolizes our “profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.” New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Here, Mr. Tobey engaged in a silent, peaceful protest using the text, of our Constitution — he was well within the ambit of First Amendment protections. And while it is tempting to hold that First Amendment rights should acquiesce to national security in this instance, our Forefather Benjamin Franklin warned against such a temptation by opining that those “who can give up essential liberty to obtain a little temporary safety, deserve neither liberty nor safety.” We take heed of his warning and are therefore unwilling to relinquish our First Amendment protections — even in an airport.
To be clear, we are not unreasonably tying the hands of Appellants. There are certainly reasonable measures that they could have taken to ensure safety, such as asking Mr. Tobey about his intentions; fining Mr. Tobey for violating TSA regulations if there was in fact one on point; turning Mr. Tobey away from the line if he refused to put on his shirt; or most simply, asking Mr. Tobey to put his shirt back on. Instead, Appellants jumped straight to arrest, infringing upon Mr. Tobey’s most basic liberty interest. The question of whether Mr. Tobey’s conduct was so “bizarre” and “disruptive” that Appellants’ reaction was reasonable or whether Mr. Tobey was targeted because of the words on his chest cannot be decided at the 12(b)(6) stage. It may be that discovery will reveal there is no genuine issue of material fact. Should this be the case, Appellants can move for summary judgment. See Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (holding that a defendant can raise the *394 qualified-immunity defense at both the motion to dismiss and summary judgment stage). However, at this stage of the proceeding, we are satisfied that Mr. Tobey has adequately pled that Appellants violated his clearly established First Amendment rights.
V.
Consistent with the reasoning above, we affirm the district court’s denial of Appellants’ qualified immunity-based motion to dismiss of Mr. Tobey’s First Amendment claim.

AFFIRMED

. Mr. Tobey filed a Second Amended Complaint on October 7, 2011, alleging all three claims asserted in the initial complaint against Appellant-Agent Doe. Agent Doe moved to dismiss on November 15, 2011, and the court issued the same ruling as it had made to Agents Smith and Jones.

. The dissent tellingly overlooks the critical fact that Mr. Tobey alleges his arrest was directly preceded by his assertion to Appellants that he removed his clothing to express his message of protest and his constitutional views. By selecting facts that support its position, the dissent inaccurately assesses Mr. Tobey’s constitutional claims.

. The dissent attempts to limit the scope of Mr. Tobey’s protest by referring to the removal of his clothes as "separately identifiable conduct.” Post at 401. What the dissent fails to understand is that Mr. Tobey removed his clothes as part of his message of protest; as a result, the dissent misapprehends the application of Spence. See post at 401-02. In exact accordance with Spence, Mr. Tobey had a specific "intent to convey a particularized message” by removing his clothes, which would have been glaringly apparent to "[the Appellants] who viewed it.” Spence, 418 U.S. at 410-11, 94 S.Ct. 2727. At the time of the incident, there was widespread uproar over the use of AIT scans. See Phil Gast, Growing Backlash against TSA Body Scanners, Pat-downs, CNN Travel, (Nov. 13, 2010, 8:39 PM), http://www.cnn.com/2010/TRAVEL/11/12/ travel.screening/index.html. Mr. Tobey removed his clothes in protest of TSA using AIT scanners because the machines, in essence, perform a 'virtual strip search.’ With this general background, it would be hard to insist, as the dissent inexplicably does, that Appellants “miss[ed] the drift” of Mr. Tobey’s "bizarre” behavior, particularly as Mr. Tobey told Appellants that he removed his clothing to convey his message of protest. See Spence, 418 U.S. at 410, 94 S.Ct. 2727. Directly in line with Spence, therefore, "the nature of [Mr. Tobey’s] activity, combined with the factual context and environment in which it was undertaken, lead to the conclusion that he engaged in a form of protected expression.” 418 U.S. at 409-10, 94 S.Ct. 2727. Spence stands for the proposition that "bizarre” behavior in the correct context can be protected expression under the First Amendment. Id. at 409-10, 94 S.Ct. 2727. Mr. Tobey’s removal of his clothing, along with his statement of protest and the Fourth Amendment on his chest, moves his allegations beyond simply "bizarre” behavior into the realm of constitutionally protected expression.

. Mr. Tobey was not required to cross-appeal the district court's dismissal of his Fourth and Fourteenth Amendment claims, as our pendent jurisdiction is limited, and should only be used in extraordinary circumstances. See, e.g., Coleman v. Parkman, 349 F.3d 534, 537 (8th Cir.2003) (holding that qualified immunity-based cross-appeal does not fall within the court’s collateral order jurisdiction or within the court's pendent appellate jurisdiction).

. Moreover, even if we agreed with the district court’s characterization of Appellants' actions as "eminently reasonable” for purposes of the Fourth Amendment, Appellants cite no authority for its argument that government action that is reasonable within the meaning of the Fourth Amendment is necessarily therefore reasonable for purposes of First Amendment analysis. If anything, the Supreme Court has suggested a more exacting inquiry under the First Amendment. See Zurcher v. Stanford Daily, 436 U.S. 547, 564, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978) ("Where the materials sought to be seized may be protected by the First Amendment, the requirements of the Fourth Amendment must be applied with ‘scrupulous exactitude.’ ”) (quoting Stanford v. Texas, 379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965)).

. The dissent correctly notes that "officials can still be on notice that their conduct violates established law even in novel factual circumstances.” Post at 396 (quoting Hope v. *392 Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). In a contradictory turn of events, however, the dissent repeatedly asserts that the lack of precedent undermines Mr. Tobey’s claim. See post at 394-95, 395, 395-96, 396-97, 397, 398-99, 400-01. Thus, even though the dissent purports to understand factually analogous precedent is not a prerequisite for finding that a right is clearly established, the entire dissent seemingly hinges on this very premise. Moreover, the unequivocal constitutional precedent provided Appellants with more than adequate notice that they cannot retaliate against Mr. Tobey for exercising his First Amendment rights. This is not an abstract principle but an irrefutable precept.

. Even if Rendon was on point, we normally will not look to other circuits in order to find that the law in our Circuit is not clearly established. See, e.g., Wilson v. Layne, 141 F.3d 111, 114 (4th Cir.1998) (en banc) aff’d, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (citing Cullinan v. Abramson, 128 F.3d 301, 311 (6th Cir. 1997), in which the Sixth Circuit explained that "[o]rdinarily, at least, in determining whether a right is 'clearly established' this court will not look beyond the Supreme Court and Sixth Circuit precedent”).