**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

|  |  |
|---|---|
| PHILLIP MOCEK, | |
| Plaintiff-Appellant, | |
| v. | No. 14-2063 |
| CITY OF ALBUQUERQUE; ALBUQUERQUE AVIATION POLICE DEPARTMENT; MARSHALL KATZ, in his official capacity as Chief of Police of the Albuquerque Aviation Police Department; JONATHAN BREEDON; GERALD ROMERO; ANTHONY SCHREINER; ROBERT F. DILLEY, also known as Bobby Dilley; LANDRA WIGGINS; JULIO DE LA PENA; DOES 1-25, inclusive, | |
| Defendants-Appellees. | |

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 1:11-CV-01009-JB-KBM)**

---

Mary Louis Boelcke (William Simpich, Law Office of William Simpich, Oakland, California, and James R. Wheaton, Cherokee Melton, First Amendment Project, Oakland, California, with her on the briefs), Albuquerque, New Mexico, for Appellant.

Jeffrey L. Baker, the Baker Law Firm (Renni Zifferblatt, The Baker Law Firm, with him on the brief), Albuquerque, New Mexico, for City of Albuquerque Appellees.

Edward J. Martin, Senior Trial Attorney, Torts Branch (Joyce R. Branda, Acting Assistant Attorney General, Damon Martinez, United States Attorney, Rupa Bhattacharyya, Director, Torts Branch, Andrea W. McCarthy, Senior Trial Counsel, and H. Thomas Byron III, Appeals Counsel, with him on the brief) Civil Division, United States Department of Justice, Washington, D.C., for the Federal Appellees.

---

Before **TYMKOVICH**, Chief Judge, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

Phillip Mocek was arrested for concealing his identity after filming airport security procedures and being questioned on suspicion of disorderly conduct. He then sued agents of the Transportation Security Administration, officers of the Albuquerque Aviation Police Department, and the City of Albuquerque for alleged constitutional violations. He asserted that he was arrested without probable cause and in retaliation for protected speech. He further contended that the officers and City abused process under New Mexico law.

The district court dismissed each of his claims. We conclude that the individual defendants are entitled to qualified immunity because a reasonable officer could have believed Mocek violated New Mexico law by failing to show identification during an investigative stop. In addition, it was not clearly established that a plaintiff could maintain a retaliatory arrest claim for an arrest arguably supported by probable cause. Mocek also fails to state claims for malicious abuse of process or municipal liability. We AFFIRM.

# I. Background

Mocek has a practice of refusing to show his photo identification at airport security checkpoints. Prior to 2008, he was able to clear checkpoints by complying with alternative TSA identification procedures. In 2008, the TSA established a policy that those who "simply refuse[d] to provide any identification or assist transportation security officers in ascertaining their identity" would not be allowed past checkpoints, but that people whose I.D.s had been "misplaced" or "stolen" could get through if they cooperated with alternative procedures. App. 014.

## A. *The Arrest*

In November 2009, Mocek arrived at the Albuquerque Sunport for a flight to Seattle. He gave his driver's license—his only form of photo I.D.—to a travel companion who then went through security. At the security podium Mocek gave the TSA agent his boarding pass, but told him he did not have identification. The agent then directed him to a different line, where another TSA agent began an alternative identification procedure. This entailed asking Mocek for other proof of identity, such as a credit card. When Mocek did not comply, the agent told him he would contact the TSA's Security Operations Center and that if the Center could not verify Mocek's identity, Mocek would not be allowed through the checkpoint.

Believing these procedures were atypical, Mocek began filming the encounter. The agent ordered him to stop recording. When Mocek persisted, the agent summoned the police for assistance. While the police were on their way, two other TSA agents appeared. One of them ordered Mocek to stop filming and apparently attempted to grab the camera out of his hand. Mocek remained calm, but continued to record and would not identify himself.

When the police arrived, the agents told them that Mocek was "causing a disturbance," would not put down his camera, and was "taking pictures" of all the agents. *Id.* at 018–19. One of the officers, Robert Dilley, warned Mocek that if he did not comply with the agents' instructions, he would be escorted out of the airport. Another officer threatened to arrest Mocek. But Mocek continued to film and insisted that he was in compliance with TSA regulations.[1] Officer Dilley eventually began ushering Mocek out of the airport, but having heard from another officer that Mocek refused to show his identification, he stopped and asked to see Mocek's I.D. Officer Dilley told Mocek that he could be arrested if

---

[1] According to the complaint, a TSA blog post stated that photography and filming were generally allowed at airport security checkpoints as long as they did not capture the TSA's monitors, but that state and local restrictions might still apply. Before arriving at the Albuquerque Sunport, Mocek contacted a local TSA official to inquire about restrictions. The official told him there were no state or local prohibitions against photography or film, but that "advance coordination would need to be made" with the TSA. App. at 016. When Mocek followed up to ask why coordination was necessary, the official explained that it was "a local practice and not available in writing" and that her instruction was "a recommendation." *Id.*

-4-

he did not present identification. Mocek responded that he did not have any identification on him. Officer Dilley then said that Mocek was under investigation for disturbing the peace and was required to present identification. Mocek declared that he would remain silent and wanted to speak to an attorney. Officer Dilley arrested him. At some point, the police confiscated the camera and deleted the video recordings.

### B. The Criminal Complaint and Trial

In the officers' incident reports, they stated that Mocek had caused a disturbance by yelling and had disobeyed an order to leave the airport. They ultimately charged him with disorderly conduct, concealing name or identity, resisting an officer's lawful command, and criminal trespass. Their criminal complaint alleged that he "was refusing [to comply] and began causing a disturbance, by yelling." *Id.* at 022 (internal quotation marks omitted). Mocek contends that the video recordings, which he recovered using forensic software, disprove these allegations. He introduced that footage at his criminal trial and was acquitted on all counts.

### C. The District Court Proceedings

Mocek brought this action alleging First and Fourth Amendment violations and seeking damages under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as well as declaratory relief. He contended that (1) the agents and officers violated the

Fourth Amendment by arresting him without probable cause to believe he had committed a crime, and (2) the arrest was in retaliation for exercising his alleged First Amendment right to film at a security checkpoint. He additionally sued the officers and City for malicious abuse of process under New Mexico tort law, asserting they had arrested him for purely pretextual reasons and then filed a criminal complaint without probable cause.

The district court granted the defendants' Rule 12(b)(6) motions to dismiss for all claims.

## II. Analysis

Mocek claims the district court should not have dismissed the complaint, contending he adequately pleaded that (1) it was clearly established that no probable cause existed to arrest him for concealing identity under New Mexico law, (2) it was clearly established that filming at the checkpoint was protected speech under the First Amendment, and (3) the officers and City maliciously abused the judicial process by filing a criminal complaint against him unsupported by probable cause.

We review the district court's grant of a Rule 12(b)(6) motion to dismiss de novo. *McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a plaintiff cannot rely on "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. We accordingly "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

We first discuss Mocek's constitutional claims as they pertain to the individual defendants. Next, we consider whether his constitutional claims can stand against the City. Finally, we review his tort claim for malicious abuse of process against the police defendants and the City.

### A. Constitutional Claims Against the Individual Defendants

#### 1. Qualified Immunity Standard

Individual government actors are immune from suit under § 1983 and *Bivens* unless a plaintiff demonstrates "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (internal quotation marks omitted). For a violation to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012).

-7-

"We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083. Our inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Morris*, 672 F.3d at 1196 (internal quotation mark omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). An officer is therefore immune for a reasonable mistake of law, reasonable mistake of fact, or a reasonable mistake "based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation mark omitted).

### 2. *Fourth Amendment Claims*

Mocek's first claim is that the defendants violated his Fourth Amendment rights by arresting him without a warrant. The district court held there was probable cause to arrest Mocek for concealing his identity when he did not produce an I.D. after the officers requested it. Mocek argues it was clearly established that Officer Dilley had insufficient evidence to arrest him for that crime or any other.

As a general matter, a warrantless arrest is consistent with the Fourth Amendment when there is probable cause to believe the arrestee has committed a crime. *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010). In New Mexico, it is a misdemeanor to "conceal[] one's true name or identity . . . with intent to obstruct the due execution of the law or with intent to intimidate, hinder,

-8-

or interrupt any public officer or any other person in a legal performance of his duty." N.M. Stat. Ann. § 30-22-3. But an officer may not arrest someone for concealing identity without "reasonable suspicion of some predicate, underlying crime." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008) (citing *Brown v. Texas*, 443 U.S. 47, 52 (1979)). During an investigative stop supported by reasonable suspicion of a predicate, underlying crime, "it is well established that an officer may ask a suspect to identify himself." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 186 (2004). A state may criminalize the suspect's failure to comply. *Id.* at 188.

Thus, to determine whether Mocek's arrest comported with the Fourth Amendment, we must first consider whether there was reasonable suspicion to stop him and request his identity. If there was, we next must determine whether probable cause existed to believe he concealed his identity. Although we hold the investigative stop was justified by reasonable suspicion of disorderly conduct, we doubt that there was probable cause to arrest Mocek merely for failing to show documentation proving his identity in this case. Nonetheless, the officers are entitled to qualified immunity because even assuming they misinterpreted New Mexico law, their mistake was reasonable.

### a.  Reasonable Suspicion

We look to the "totality of the circumstances" to determine whether there was reasonable suspicion of wrongdoing. *United States v. Arvizu*, 534 U.S. 266,

274 (2002). "[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* The question is "whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (internal quotation marks omitted) (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). And "reasonable suspicion may exist even if it is more likely than not that the individual is not involved in any illegality." *United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011) (internal quotation marks omitted).

The district court held the facts known to the officers justified stopping Mocek on reasonable suspicion of disorderly conduct. We agree. Under New Mexico law, disorderly conduct consists of conduct that (1) is "violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly" and (2) tends to disturb the peace. *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008); *see also* N.M. Stat. Ann. § 30-20-1(A). "Conduct which tends to disturb the peace is that conduct which is inconsistent with the peaceable and orderly conduct of society." *State v. Correa*, 222 P.3d 1, 7 (N.M. 2009) (internal quotation marks omitted). This includes an act that "disturbs the peace and tranquility of the community." *Id.* at 9 (internal quotation marks omitted).

-10-

Mocek argues that he was calm throughout the ordeal and did not disturb other travelers. But the complaint alleges that when police arrived, the TSA agents told them he had been "causing a disturbance," refused orders to put down his camera, and was filming the agents. App. 018–19. Officer Dilley, the arresting officer, was entitled to rely in good faith on these representations of Mocek's earlier conduct. *Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995) (holding an officer's reasonable-suspicion determination could rely on border patrol agent's representations of events that occurred before the officer arrived); *see also Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997) ("Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and probable cause for an arrest."). In addition, the officers witnessed at least three TSA agents attending to the situation, having left behind other duties. These sorts of disruptions at TSA checkpoints are especially problematic.[2] Consequently, the officers had grounds to suspect Mocek

---

[2]  The Department of Transportation has advised,

> A screener encountering [interference with procedures] must turn away from his or her normal duties to deal with the disruptive individual, which may affect the screening of other individuals. The disruptive individual may be attempting to discourage the screener from being as thorough as required. The screener may also need to summon a checkpoint screening supervisor and law enforcement officer, taking them away from other duties. Checkpoint disruptions potentially can be dangerous in these situations.

(continued...)

had engaged or was engaged in disorderly behavior that would tend to disturb the peace at an airport security checkpoint. The fact that bystanders were undisturbed did not eliminate reasonable suspicion. Culpable conduct need not actually disturb the peace, but merely must be of the sort that *tends* to disturb the peace. *State v. James M.*, 806 P.2d 1063, 1066 (N.M. Ct. App. 1990).

In concluding there was reasonable suspicion of disorderly conduct, we emphasize the uniquely sensitive setting we confront in this case. *See Correa*, 222 P.3d at 9 (suggesting the "time, place, and manner" of the defendant's conduct influences whether it "disturb[s] the tranquility of the community"); *cf. United States v. Guardado*, 699 F.3d 1220, 1223 (10th Cir. 2012) (holding the location of an investigative stop is "a factor that contributes to an officer's reasonable suspicion"). Order and security are of obvious importance at an airport security checkpoint. *See Corbett v. TSA*, 767 F.3d 1171, 1180 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 2867 (2015); *United States v. Hartwell*, 436 F.3d 174, 179 (3d Cir. 2006); *United States v. Marquez*, 410 F.3d 612, 618 (9th Cir. 2005); *United States v. Yang*, 286 F.3d 940, 944 n.1 (7th Cir. 2002). As a result, conduct that is relatively benign elsewhere might work to disturb the peace at these locations. Many travelers are tense, no one enjoys the screening process,

---

[2](...continued)

Civil Aviation Security Rules, 67 Fed. Reg. 8340, 8344 (Feb. 22, 2002) (codified at 49 C.F.R. § 1540.109).

and people are in various states of disrobing and adjusting clothing without a modicum of privacy.

From a reasonable officer's perspective, Mocek's filming may have invaded the privacy of other travelers or posed a security threat, insofar as it could have been used to circumvent or expose TSA procedures. The possibility that he had malign intentions raised the likelihood that his conduct would compromise orderly operations at the checkpoint. So did the chance that he was violating TSA regulations against interfering with security systems or personnel. *See* 49 C.F.R. §§ 1540.105(a), 1540.109. Mocek had been resisting the agents' attempts to identify him, and it was clear that passengers who "simply refuse[d] to provide any identification or assist transportation security officers in ascertaining their identity" would not be allowed past checkpoints. App. 014.

Based on the face of the complaint, the information available to Officer Dilley indicated that Mocek had distracted multiple TSA agents, persistently disobeyed their orders, already caused a "disturbance" (according to the agents on the scene), and potentially threatened security procedures at a location where order was paramount. Under these circumstances, a reasonable officer would have had reason to believe, or at least investigate further, that Mocek had committed or was committing disorderly conduct.

Accordingly, Officer Dilley was justified in stopping Mocek and asking him to identify himself as part of the investigation. *Hiibel*, 542 U.S. at 186.

### b. *Probable Cause*

Our next inquiry is whether there was probable cause, or at least arguable probable cause, to arrest Mocek for concealing name or identity under N.M. Stat. Ann. § 30-22-3.  *See Cortez v. McCauley*, 478 F.3d 1108, 1120, 1120 n.15 (10th Cir. 2007) (en banc) (explaining that a reasonable belief in probable cause, sometimes referred to as "arguable probable cause," confers qualified immunity). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."  *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (internal quotation marks omitted).  This is true regardless of the officer's subjective intent.  *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) ("The constitutionality of an arrest does not depend on the arresting officer's state of mind."); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Mocek argues there was no probable cause to arrest him for concealing name or identity under § 30-22-3 because (1) Officer Dilley never even asked for Mocek's name;[3] (2) although Officer Dilley did ask for Mocek's I.D., he did not

---

[3]  Mocek additionally alleges that he in fact revealed his name because it was printed on the boarding pass he gave to the TSA agents, though the complaint

(continued...)

-14-

ask for other identifying information; and (3) the statute does not criminalize the mere failure to produce physical documentation of identity.[4]  Mocek may be correct that Officer Dilley misinterpreted the statute.  But even if he did, he at least had arguable probable cause to arrest Mocek because any mistake of law on his part was reasonable.

To view the statute in context, we must first consider the Supreme Court's decision in *Kolender v. Lawson*, 461 U.S. 352 (1983).  In that case, California had criminalized the failure to furnish "credible and reliable" identification upon request during an investigative stop.  *Id.* at 356.  This meant "identification carrying reasonable assurance that the identification is authentic and providing means for later getting in touch with the person who has identified himself."  *Id.* at 357 (internal quotation marks omitted).  The Court held the statute was unconstitutionally vague because the "credible and reliable" requirement was too indefinite and "vest[ed] virtually complete discretion in the hands of the police to determine whether the suspect . . . satisfied the statute."  *Id.* at 358.

---

[3](...continued)
does not indicate that Officer Dilley knew about the boarding pass.

[4]  Although there was reasonable suspicion of disorderly conduct, the district court did not find, and the defendants do not argue, that there was probable cause to arrest Mocek for that misdemeanor.  Nor do they argue that there was probable cause to arrest him for resisting an officer's lawful command, *see* N.M. Stat. Ann. § 30-22-1(D), or criminal trespass, *see* N.M. Stat. Ann. § 30-14-1, though he was also charged with those offenses.

-15-

In New Mexico, where the statute prohibits "concealing one's true name *or* identity," N.M. Stat. Ann. § 30-22-3 (emphasis added), "name" and "identity" are not synonymous. *State v. Andrews*, 934 P.2d 289, 291 (N.M. Ct. App. 1997). But courts have not precisely defined what it means to furnish "identity," except to say that suspects must "provide police officers the minimal, essential information regarding identity so that they can perform their duties." *Id.* In at least some contexts, this requires documentation or the information contained therein. *Andrews* upheld the conviction of a defendant who gave his name during a traffic stop but failed to provide his driver's license or equivalent information. *Id.* at 292. The court relied in part on testimony that "this information is necessary for officers to verify a driver's license and otherwise perform their lawful duties." *Id.* In addition, the holding was grounded in the court's view that there was no vagueness concern under *Kolender* because New Mexico drivers, already on notice that they must carry driver's licenses, could easily discern that the statute required production of a driver's license or the information therein during a traffic stop. *Id.* at 293. Likewise, there was no risk of arbitrary enforcement. *Id.* Nonetheless, the court expressly declined to "specify[] what identifying information might be appropriate in all situations." *Id.* at 292.

In light of that careful limitation, we doubt that § 30-22-3 criminalizes the mere failure to produce documentation during a stop for suspicion of disorderly conduct. It is entirely unclear what type of identification a suspect would need to

show during such a stop.  Nothing on the face of Mocek's complaint or in case law indicates that any particular document is necessary for the officers to perform their investigative duties, although it is obvious that a person intending to clear security screening and board a plane may need some form of identification.[5]

Other states' "stop and identify"[6] statutes also suggest that mere failure to produce documentation is not illegal, as most jurisdictions do not compel suspects to furnish documentation outside the context of traffic violations.[7]

---

[5] Federal regulations applicable at the time of Mocek's arrest tell us that passengers may need specific documentation to board an airplane.  *See* 49 C.F.R. §§ 1540.107(c) (requiring a "verifying identity document . . . when requested for purposes of watch list matching under § 1560.105(c), unless otherwise authorized by TSA on a case-by-case basis"), 1560.105(c)-(d) (requiring aircraft operators to request verifying identity documents from passengers when necessary for watch list matching purposes), 1560.3 (defining "verifying identity document" in detail). And Mocek's own complaint alleges that starting in 2008, "passengers who willfully refused to show I.D. would not be allowed past their checkpoint."  App. 014.

[6] The Supreme Court has referred to these types of statutes, including New Mexico's law, as "stop and identify" statutes.  *See Hiibel*, 542 U.S. at 182.

[7] There seem to be two exceptions: Colorado, *see* Colo. Rev. Stat. § 16-3-103(1) (an officer may require a suspect to divulge "his name and address, identification if available, and an explanation of his actions"), and Delaware, *see* Del. Code Ann. § 1321(6) (an officer who suspects a person of loitering may "request[] identification and an explanation of the person's presence and conduct").  In contrast, in many states officers may only request name, address, and an explanation of the suspect's actions.  *See* Ala. Code § 15-5-30; 725 Ill. Comp. Stat. 5/107-14; Kan. Stat. Ann. § 22-2402(1); La. Code Crim. Proc. Ann. art. 215.1; La. Rev. Stat. § 108(B)(1)(c) (also requiring an arrested or detained suspect to "make his identity known"); Mont. Code Ann. § 46-5-401(2)(a); Neb. Rev. Stat. § 29-829; N.Y. Crim. Proc. Law § 140.50(1); N.D. Cent. Code § 29-29-21; Utah Code Ann. § 77-7-15; Wis. Stat. § 968.24.  Similarly, some

(continued...)

-17-

In any event, New Mexico law is not entirely clear on whether someone in Mocek's shoes might be required to answer basic questions about his identity, such as a request for his address. But Officer Dilley's *only* request was for documentation, and failing to show documentation, in isolation, during an investigative stop for disorderly conduct might not amount to concealing one's identity.

Nonetheless, Officer Dilley is entitled to qualified immunity. A reasonable mistake in interpreting a criminal statute, for purposes of determining whether there is probable cause to arrest, entitles an officer to qualified immunity. *See Pearson*, 555 U.S. at 231 (holding officials are entitled to qualified immunity for reasonable mistakes of law); *Fogarty*, 523 F.3d at 1159 (resolving qualified immunity question by reviewing whether state law under which suspect was arrested was ambiguous). Here, New Mexico courts had explicitly held "[i]dentity is not limited to name alone" and "failing to give either name or

---

[7](...continued)
states allow officers to request name, address, business abroad, and destination. *See* Mo. Rev. Stat. § 84.710(2) (applying only to Kansas City); N.H. Rev. Stat. Ann. §§ 594:2, 644.6 (also requiring a suspect to provide an account of his or her conduct when suspected of loitering or prowling); R.I. Gen. Laws § 12-7-1. The remaining "stop and identify" laws also appear not to require documentation. *See* Ariz. Rev. Stat. Ann. § 13-2412; Ark. Code Ann. § 5-71-213(a)(1); Fla. Stat. §§ 856.021(2), 901.151(2); Ga. Code Ann. § 16-11-36(b); Ind. Code § 34-28-5-3.5 (a stopped suspect must provide *either* a "name, address, and date of birth" *or* a driver's license, if available, when stopped for an infraction or ordinance violation); Nev. Rev. Stat. § 171.123(3); Ohio Rev. Code Ann. § 2921.29; Vt. Stat. Ann. tit. 24, § 1983. Note that not all states explicitly criminalize non-compliance.

identity may violate the statute." *Andrews*, 934 P.2d at 291. They had also held that at least during traffic stops, the statute requires a driver to produce a driver's license or the information therein upon request. *Id.* at 292. Although the court declined to "specify[] what identifying information might be appropriate" outside the driving context, *id.*, it nowhere foreclosed the possibility that documentation is required elsewhere. Thus, a reasonable officer could have believed that an investigative stop for disorderly conduct at an airport security checkpoint required the production of some physical proof of identity. And Mocek provided none.

An officer also could have reasonably determined that Mocek intended "to obstruct the due execution of the law or . . . to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty." N.M. Stat. Ann. § 30-22-3. Suspects must "furnish identifying information *immediately upon request* or, if the person has reasonable concerns about the validity of the request, so soon thereafter as not to cause any substantial inconvenience or expense to the police." *State v. Dawson*, 983 P.2d 421, 424 (N.M. Ct. App. 1999) (emphasis added). Mocek did not present identification immediately upon request. When asked a second time, he announced that he would remain silent. Given Mocek's continued refusal to show identification and resolution to remain silent, a reasonable officer could have thought he was intentionally hindering investigative efforts. *See Albright*, 51 F.3d at 1537 (implying that persistent refusal to identify oneself supports inference of intentionally hindering

-19-

investigation); *see also Hiibel*, 542 U.S. at 186 ("Obtaining a suspect's name in the course of a *Terry* stop serves important government interests. Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder."). Thus, in these circumstances, an officer who reasonably believed identification was required could have also believed that Mocek's ongoing failure to show it violated the statute.

Mocek's responses are unavailing. First, he contends that *Kolender* clearly establishes that suspects have no duty to provide physical identification upon request. But *Kolender* is not on point because it nowhere considered a Fourth Amendment claim. That case merely struck down another state's statute for vagueness under the Fourteenth Amendment, 461 U.S. at 353, while Mocek does not challenge the constitutional validity of § 30-22-3. At any rate, the validity of the statute is hardly relevant to the probable cause determination because officers generally may presume that statutes are constitutional until declared otherwise. *See Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979) ("Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws."); *see also Vives v. City of New York*, 405 F.3d 115, 117–18 (2d Cir. 2004) (applying same reasoning to qualified-immunity determination); *Risbridger v.*

-20-

*Connelly*, 275 F.3d 565, 573 (6th Cir. 2002) (same).  Although future courts might limit the scope of *Andrews* more explicitly, police officers are not required to anticipate such limitations.

Even if the validity of § 30-22-3 were relevant to the probable cause determination, Mocek has not shown that the defendants' broad construction of the statute would render it vague.  Unlike the California statute in *Kolender*, the New Mexico statute provides that a suspect is only liable if he intends "to obstruct the due execution of the law or . . . to intimidate, hinder, or interrupt any public officer or any other person in a legal performance of his duty."  N.M. Stat. Ann. § 30-22-3.  The Sixth Circuit held a disorderly conduct ordinance using similar language[8] was not vague under *Kolender. Risbridger*, 275 F.3d at 574.  The plaintiff had been arrested under the ordinance for refusing to present identification when requested.  *Id.* at 567–68.  He argued that the ordinance was vague as applied.  *Id.* at 572.  The court disagreed, holding there was no risk of arbitrary or unfettered enforcement because "it is the hindering or obstructing of an officer in the performance of his duties that constitutes a misdemeanor," rather than declining to present identification in and of itself.  *Id.*  In light of that persuasive reasoning, there is no clearly established violation here.  Reading § 30-

---

[8]  The ordinance in that case made "it a misdemeanor to assault, obstruct, resist, hinder, or oppose any member of the police force in the discharge of his/her duties as such."  *Risbridger*, 275 F.3d at 568 (alterations and internal quotation marks omitted).

22-3 to prohibit a suspect from concealing physical identification would not necessarily make the statute vague.

Next, Mocek points out that he truthfully told Officer Dilley he did not have identification with him (even though his friend apparently had the driver's license). He asserts that Officer Dilley violated his duty to reasonably investigate before making an arrest. *See Romero v. Fay*, 45 F.3d 1472, 1476–77 (10th Cir. 1995) ("[T]he Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention."). But Officer Dilley did investigate sufficiently. Another officer had told him, "He don't want to show his I.D." App. 019. Officer Dilley could rely on a fellow officer's representation in finding probable cause. *Foote*, 118 F.3d at 1424. He could also find that testimony more credible than Mocek's own story that he had no I.D. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998) ("[O]fficers may weigh the credibility of witnesses in making a probable cause determination."); *Munday v. Johnson*, 257 F. App'x 126, 134 (10th Cir. 2007) ("[P]olice officers are not required to forego making an arrest based on facts supporting probable cause simply because the arrestee offers a different explanation.").

Further, the complaint indicates that Officer Dilley asked Mocek for identification at least twice, explaining that he was under investigation for

-22-

disturbing the peace and could be arrested if he did not obey. As discussed above, Mocek not only failed to immediately furnish identification, but also impeded any further inquiry by resolving to remain silent. This was ample evidence and time for a reasonable officer to ascertain probable cause. *See Dawson*, 983 P.2d at 424 ("[W]e find . . . support for a rule that permits one a few moments to consider the consequences of refusal to identify oneself. But that period would have to be brief. . . . Any delay in identifying oneself would 'hinder' or 'interrupt' law enforcement officers."). And once probable cause is established, "officers are not required to do a more thorough investigation." *Cortez*, 478 F.3d at 1116 n.7.

Next, Mocek makes two challenges based on Officer Dilley's alleged ulterior motives. Mocek first argues that asking for identification exceeded the scope of the investigation for disorderly conduct and that Officer Dilley used § 30-22-3 as an excuse to arrest him where there were no other grounds for doing so. He relies on Supreme Court language explaining that the request for identification must be "reasonably related to the circumstances justifying the stop" and "not an effort to obtain an arrest for failure to identify after a *Terry* stop yielded insufficient evidence." *Hiibel*, 542 U.S. at 189. But the request for Mocek's identification was a "commonsense inquiry" meant to gather basic information about a suspect, which has "an immediate relation to the purpose,

-23-

rationale, and practical demands of a *Terry* stop." *Id.* Mocek's refusal to cooperate interfered with these efforts to investigate possible disorderly conduct.

Second, Mocek argues the arrest was a mere pretext for seizing his camera and destroying his recordings of the security checkpoint. He cites our holding that police cannot use an administrative search as an excuse to enter a building to seize suspected contraband. *See Winters v. Bd. of Cty. Comm'rs*, 4 F.3d 848, 854 (10th Cir. 1993). To hold otherwise, we explained, would allow police "to seize evidence of criminal activity without a warrant when the officer has a particularized suspicion regarding that evidence." *Id.* Mocek similarly cites *United States v. Pearl*, 944 F. Supp. 51, 52–54 (D. Me. 1996), in which the court granted a criminal defendant's motion to suppress where an officer stopped him without reasonable suspicion and later fabricated evidence to justify the stop. *Winters* and *Pearl* are inapposite. In those cases police clearly lacked probable cause and devised a subterfuge for avoiding the requirement altogether. But it was not clear that Officer Dilley lacked probable cause, and he did not use any artifice to circumvent the law. Moreover, it is beyond debate that an officer's subjective intent is irrelevant to the probable cause determination. *See Apodaca*, 443 F.3d at 1289.

We therefore hold Officer Dilley is entitled to qualified immunity on Mocek's Fourth Amendment claim. Mocek also asserts Fourth Amendment claims against the other officers and the TSA agents on the theory that they acted

in concert with Officer Dilley. His brief advances no theory as to how they could be liable where the arresting officer had arguable probable cause—at worst, based on a reasonable mistake of law—in choosing to arrest him.[9] Accordingly, we hold that all of the individual defendants are entitled to qualified immunity.

### 3. First Amendment Claims

Mocek next contends that he had a First Amendment right to film at the security checkpoint. He asserts that the defendants unconstitutionally retaliated against his exercise of that right when they arrested him for doing so. The district court dismissed this claim after finding it was reasonable to restrict filming at an airport security checkpoint, a nonpublic forum. The defendants add that they are entitled to qualified immunity because they reasonably believed they had probable cause to arrest Mocek, and at the time of the arrest, it was not clearly established

---

[9] Mocek's claim against the TSA agents relies on *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013). In that case, a divided Fourth Circuit panel held that by calling the police to deal with a disruptive traveler, TSA agents could incur liability for a resulting unconstitutional arrest. *Id.* at 386. The Third Circuit expressly disagreed with *Tobey* that an arrest is "an undoubtedly natural consequence of reporting a person to the police." *George v. Rehiel*, 738 F.3d 562, 583 (3rd Cir. 2013). A circuit split will not satisfy the clearly established prong of qualified immunity.

But even if we were persuaded by *Tobey*, Mocek has made no compelling argument as to why its logic should apply here. Officer Dilley arrested him only after he refused to show identification, which occurred well after the agents had called Officer Dilley to the scene. Officer Dilley exercised his own judgment, and even if he was mistaken in his probable cause determination, a reasonable officer could have believed there was probable cause to arrest Mocek for concealing identification.

that plaintiffs could maintain retaliation claims for arrests supported by probable cause. We agree.

To state a First Amendment retaliation claim, a plaintiff must allege "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009).

Recognizing his threshold problem under this standard, Mocek asks us to rely on cases from other circuits holding there is First Amendment protection for creating audio and visual recordings of law enforcement officers in public places. *See ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). *But see Gericke v. Begin*, 753 F.3d 1, 7–8 (1st Cir. 2014) (holding the right to film an officer at a traffic stop was not unlimited); *Kelly v. Borough of Carlisle*, 622 F.3d 248, 262 (3d Cir. 2010) (holding there was no clearly established "right to videotape police officers during a traffic stop"); *McCormick v. City of Lawrence*, 130 F. App'x 987, 988–89 (10th Cir. 2005) (holding it was not clearly established that police violated the First Amendment by destroying recordings of police activity at roadside sobriety checkpoints); *Szymecki v. Houck*, 353 F. App'x 852,

-26-

853 (4th Cir. 2009) (holding the right to record police activity on public property was not clearly established). Mocek further argues his arrest was substantially motivated by his recording and would have chilled a person of ordinary firmness from continuing to film.

As an initial matter, an airport is a nonpublic forum, where restrictions on expressive activity need only "satisfy a requirement of reasonableness." *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 683 (1992). Mocek argues that forum analysis and time, place, and manner analysis do not apply in determining whether his conduct was "protected speech" for purposes of a retaliation claim, such that any government conduct intended to stop activity that is *sometimes* protected by the First Amendment is unconstitutional retaliation. But most other circuits have applied forum and time, place, and manner analyses to retaliation claims. *See Gericke*, 753 F.3d at 7–8 (holding, for purposes of a retaliation claim, "[r]easonable restrictions on the exercise of the right to film may be imposed when the circumstances justify them," including "[t]he circumstances of some traffic stops"); *Dean v. Byerley*, 354 F.3d 540, 552 (6th Cir. 2004) (holding, for purposes of a retaliation claim, "*[b]ecause Michigan has not passed an applicable time, place, or manner restriction*, Dean had a constitutionally protected right to engage in peaceful targeted picketing in front of Byerley's residence" (emphasis added)); *Abrams v. Walker*, 307 F.3d 650, 654 (7th Cir. 2002) (rejecting argument that sometimes-protected speech can always

-27-

support a retaliation claim), *abrogated on other grounds by Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004); *Blomquist v. Town of Marana*, 501 F. App'x 657, 659 (9th Cir. 2012) (holding plaintiffs could not maintain a retaliation claim where they "lacked a First Amendment right to picket or otherwise occupy" a nonpublic forum); *Olasz v. Welsh*, 301 F. App'x 142, 146 (3d Cir. 2008) (holding, for purposes of a retaliation claim, "restricting . . . disruptive behavior constitutes the type of time, place, and manner regulation that survives even the most stringent scrutiny for a public forum"); *cf. Carreon v. Ill. Dep't of Human Servs.*, 395 F.3d 786, 796–97 (7th Cir. 2005) (rejecting, in an employment-termination context, a retaliation claim premised on freedom of association where restrictions on association were reasonable in a nonpublic forum).

Thus, even if we agreed there is a First Amendment right to record law enforcement officers in *public*, we would still need to determine whether that conduct is protected at an airport security checkpoint. But we need not answer this question because Mocek cannot satisfy the third prong of a retaliation claim: that the government's actions were substantially motivated in response to his protected speech. When Mocek was arrested, it was not clearly established that a plaintiff could show the requisite motive where his arrest was arguably supported by probable cause. Mocek has not addressed Tenth Circuit or Supreme Court precedent compelling that conclusion.

It is true that in *DeLoach v. Bevers*, 922 F.2d 618 (10th Cir. 1990), we held an arrest "taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Id.* at 620.  This might have implied that plaintiffs could maintain retaliatory arrest claims even where probable cause existed.  But the Supreme Court in a case after *DeLoach* held a plaintiff stating a retaliatory *prosecution* claim must show there was no probable cause to support the indictment.  *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006).  Addressing the question of whether *Hartman* abrogated *DeLoach*, we held in 2011 that *Hartman*'s rule for retaliatory prosecution claims did *not* apply to "ordinary retaliation cases," so that a retaliatory arrest claim could lie notwithstanding probable cause.  *Howards v. McLaughlin*, 634 F.3d 1131, 1148–49 (10th Cir. 2011).  The Supreme Court reversed.  *Reichle v. Howards*, 132 S. Ct. 2088 (2012).  The Court held the law had not been clearly established in the Tenth Circuit at the time of the arrest at issue (June 2006) because "reasonable officers could have questioned whether the rule of *Hartman* also applied to arrests."  *Id.* at 2095.  The Court declined to answer the question on the merits.

Mocek was arrested in November 2009.  Because the law was not clearly established in June 2006, and because no Supreme Court or Tenth Circuit decision between then and November 2009 clarified the law, the law was not clearly established at the time of Mocek's arrest.  Regardless of Officer Dilley's

motivations, he could have reasonably believed he was entitled to arrest Mocek as long as he had probable cause. And, as discussed above, he could have reasonably believed he had probable cause.

Accordingly, the defendants are entitled to qualified immunity on Mocek's First Amendment retaliation claim.

### 4. *Declaratory Relief*

In addition to damages, Mocek seeks declaratory relief against the defendants in their official capacities. As an initial matter, the district court properly dismissed the claim against the TSA defendants for lack of jurisdiction because Mocek's pleadings never identified a federal waiver of sovereign immunity. A suit against a government agent in his official capacity is treated as a suit against the government, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), and the federal government may only be sued where it has waived sovereign immunity, *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002). Further, a complaint must state the jurisdictional basis for all of the claims alleged therein. Fed. R. Civ. P. 8(a)(1); *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996) ("[Plaintiff's] pleadings offer no grounds for finding an express waiver of immunity over any of the claims in question and, therefore, no proper grounds for jurisdiction in federal court."); *see also Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) ("Federal courts are courts of limited jurisdiction, and the presumption is that they lack jurisdiction unless and until a plaintiff

pleads sufficient facts to establish it."). Because Mocek has not disputed the district court's conclusion that none of the statutes alleged in his complaint waive sovereign immunity, we find no error.

As for the claims against the police defendants in their official capacities, Mocek challenges only the denial of declaratory relief for his First Amendment claim. "In a case of actual controversy within its jurisdiction," a district court may declare the parties' "rights and other legal relations" even where other relief is unavailable. 28 U.S.C. § 2201(a). In making this determination, the district court must consider two questions. First, it must decide whether a case of actual controversy exists. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). We review that issue de novo to the extent that it "implicates purely legal issues and goes to the courts' subject matter jurisdiction" and for clear error to the extent that it turns on factual conclusions. *Id.* at 1240, 1240 n.1. If a case of actual controversy exists, the court should then weigh case-specific factors in deciding whether to exercise its authority to grant declaratory relief. *Id.* at 1240. We review that consideration for abuse of discretion. *Id.*

The district court held there was no case of actual controversy because Mocek had not stated a claim for a First Amendment violation. It also noted that even had he stated a claim, there would be no case of actual controversy because if there was any ongoing policy of violating the First Amendment at TSA checkpoints, the TSA itself would likely be responsible for that policy, and not

the police. Thus, it found there was no likelihood that the officers would repeat their alleged violation. Mocek asserts that he need not allege a likelihood of recurrence because he has shown that the past injury has continuing, present adverse effects. After thoroughly reviewing the complaint, we hold Mocek has not sufficiently alleged that his past injury resulted in continuing, present adverse effects.

"[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted). Mocek relies on *Meese v. Keene*, 481 U.S. 465 (1987), in which the Supreme Court held a filmmaker maintained a case of actual controversy where a statute threatened to categorize three of his films as "political propaganda." *Id.* at 473–74. But the Court also held a plaintiff must demonstrate more than a mere "subjective chill." *Id.* at 473 (internal quotation marks omitted). Thus, although the plaintiff in *Meese* alleged a risk of injury with evidence indicating the statute would harm his career, the Court noted that "[i]f [he] had merely alleged that the appellation deterred him by exercising a chilling effect on the exercise of his First Amendment rights, he would not have standing to seek its invalidation." *Id.* Mocek has not alleged any injury beyond a subjective chilling effect. His complaint simply states that he "fears he is now and will again be subjected to such unlawful and unconstitutional actions," App.

410, and his only argument on appeal is that "where police conduct deters expressive activity protected by the First Amendment, a 'continuing, present adverse effect' is shown," Aplt. Br. at 54. This ignores the plain language of *Meese*, which indicates that a merely subjective chill is not enough.

Moreover, we find no clear error in the district court's factual conclusion that any policy of violating the First Amendment would be administered by the TSA, rather than the police. Nor does Mocek argue for clear error. Accordingly, the district court correctly dismissed his claim for declaratory relief.

### B. Constitutional Claims Against the City

Mocek next contends that even if the individual defendants are immune, the City is liable under § 1983 because it caused his injuries through unconstitutional policies and practices. The district court properly denied these claims because the complaint does not plausibly allege that Mocek's injuries were caused by a deliberate municipal policy or custom.

A municipality is not liable solely because its employees caused injury. *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). Rather, a plaintiff asserting a § 1983 claim must show "1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Id.* Through "its *deliberate* conduct," the municipality must have been

-33-

the "moving force" behind the injury. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (internal quotation marks omitted).[10]

Mocek's complaint states that the City had a policy and custom of prohibiting lawful photography at the airport, retaliating against those who filmed at the airport, and failing to train its employees properly. It also asserts that these practices were the "moving force" behind Mocek's injuries and that the City was deliberately indifferent to the risks they posed. But it cites no particular facts in support of these "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Aside from conclusory statements, no allegations in the complaint give rise to an inference that the municipality itself established a deliberate policy or custom that caused Mocek's injuries. Consequently, the complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (brackets and internal quotation marks omitted).

## C. Malicious Abuse of Process

Mocek's last substantive argument is that the district court erred in dismissing his state-law malicious abuse of process claim.

### 1. Jurisdiction

---

[10] Although qualified immunity shields municipal employees where the law is not clearly established, this defense does not apply to municipalities themselves. *Cordova v. Aragon*, 569 F.3d 1183, 1193 (10th Cir. 2009).

As a threshold matter, we must address the district court's suggestion that it might not have had subject-matter jurisdiction to hear Mocek's state-law claim for malicious abuse of process. The court reasoned that after dismissing all federal causes of action against Mocek, the only basis for hearing the claim would be diversity jurisdiction. And it doubted that there was diversity jurisdiction because Mocek's complaint did not allege that the amount in controversy exceeded $75,000. Nonetheless, without clarifying the basis for its jurisdiction, the court considered the claim and granted the municipal defendants' motion to dismiss.

Because we "have an independent obligation to determine whether subject-matter jurisdiction exists" that extends to "any stage in the litigation," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 514 (2006), we must resolve the potential jurisdictional issue before reaching the merits. We hold the claim is properly before us either through diversity jurisdiction or through the district court's unchallenged exercise of supplemental jurisdiction.

A federal court has diversity jurisdiction in suits between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). The complaint alleges that Mocek is from Washington and the defendants are all from New Mexico, but does not identify a specific amount in controversy. The only dollar amounts it identifies are $34,000 in legal costs to defend against the criminal charges and $1000 in bail money. Because these total to less than half of the jurisdictional requirement, the district court questioned

-35-

whether the requirement was met.  But a complaint need not allege a specific sum in order to assert diversity jurisdiction.  *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000).  Although "[t]he amount claimed by the plaintiff in its complaint generally controls and alone can be sufficient to support subject matter jurisdiction," *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1171 (10th Cir. 2011) (internal quotation marks omitted), a complaint that does not specify an amount must merely allege facts sufficient "to convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor," *Adams*, 225 F.3d at 1183 (internal quotation mark omitted).  If the amount in controversy is challenged, the party asserting jurisdiction has the burden to show "that it is not legally certain that the claim is less than the jurisdictional amount."  *Woodmen of the World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003).

Here, the complaint states that the alleged harms not only resulted in legal costs, but also "financial and emotional distress."  App. 028.  In his prayer for relief, Mocek requests "compensatory, nominal, and special damages, in an amount according to proof, and to the extent permitted by law," as well as "such other relief as is just and proper."  *Id.* at 033–34.  Thus, it is not clear that the amount in controversy is limited to the dollar sums mentioned in the complaint.  And no hearing has been held to determine whether Mocek can satisfy his burden

-36-

of proving jurisdiction. Accordingly, it is premature to conclude that the district court had no diversity jurisdiction over the malicious abuse of process claim.

But even if it had no diversity jurisdiction, the district court was not necessarily barred from hearing the malicious abuse of process claim. A federal court has supplemental jurisdiction to hear any state-law claim that is "so related to" any claims within the court's original jurisdiction as to "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Exercising this jurisdiction is discretionary; the court may decline to hear a supplemental claim in enumerated circumstances, including where it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c).

The district court suggested it could not hear the claim under supplemental jurisdiction because it had already dismissed the related federal-question claims. But the fact that the district court could decline to exercise jurisdiction does not mean there was no jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (recognizing "a distinction between the power of a federal court to hear state-law claims and the discretionary exercise of that power"); *Moody v. Great W. Ry. Co.*, 536 F.3d 1158, 1166 (10th Cir. 2008) (distinguishing between a remand to state court for lack of federal subject-matter jurisdiction and a "discretionary remand based on a refusal to exercise supplemental jurisdiction").

-37-

Thus, there are two possible jurisdictional bases for the district court's resolution of the malicious abuse of process claim. Either (1) there was diversity jurisdiction, in which case the district court correctly heard the claim under § 1332(a)(1); or (2) there was no diversity jurisdiction, but the district court chose to exercise its supplemental jurisdiction under § 1367(a). In the first scenario, we would reach the merits. In the second scenario, we would also reach the merits because, although we ordinarily review for abuse of discretion the decision of whether to exercise supplemental jurisdiction, *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011), we decline to do so because neither party has asserted that the district court abused its discretion.[11] We have jurisdiction on appeal because the claim remains pending unless and until the district court remands it to state court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

### 2. Merits

Mocek asserts that the police officers and the City are liable for malicious abuse of process under New Mexico tort law. The district court construed Mocek's argument to rely upon a theory that the officers knowingly filed a

---

[11] Although the issue of subject-matter jurisdiction cannot be forfeited or waived, *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015), the question of whether a court should choose to decline its jurisdiction is separate, *see Carnegie-Mellon*, 484 U.S. at 349; *Moody*, 536 F.3d at 1166. We need not address the latter when the parties do not raise it. *Cf. Guillermard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 517 (1st Cir. 2009) ("[A]bstention is a waivable defense.").

-38-

complaint against him without probable cause. Accordingly, it dismissed the claim after holding there was probable cause to arrest and charge Mocek for concealing name or identity. On appeal, Mocek challenges the conclusion that there was probable cause to file charges. In addition, he claims the court overlooked his alternative argument that the arrest itself was based on a fabricated pretext. Mocek fails to state a claim under either of these theories.

New Mexico combines the torts of "abuse of process" and "malicious prosecution" into one tort called "malicious abuse of process." *Durham v. Guest*, 204 P.3d 19, 24–25 (N.M. 2009). The elements of the combined tort are "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Id.* at 26. This tort "should be construed narrowly in order to protect the right of access to the courts," *id.*, and as such it "is disfavored in the law," *Fleetwood Retail Corp. v. LeDoux*, 164 P.3d 31, 37 (N.M. 2007).

Two ways exist to establish an improper use of process in a judicial proceeding. The first is to show that the defendant "fil[ed] a complaint without probable cause." *Durham*, 204 P.3d at 26. The second, the so-called "procedural impropriety" theory, *see Fleetwood*, 164 P.3d at 36, is to show "an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly

actionable under the tort of abuse of process," *Durham*, 204 P.3d at 26 (brackets

and internal quotation marks omitted).

Mocek asserts both theories, and we consider them in turn.[12]

### a. Absence of Probable Cause

Mocek contends that the defendants abused process by filing a criminal

complaint against him without probable cause, citing what he describes as false

statements in the complaint. Specifically, the officers wrote that he had caused a

disturbance by raising his voice and refused to obey a criminal trespass

order—statements Mocek claims are contradicted by the recovered video footage

and the fact that he was acquitted after trial. He further suggests that the officers

were motivated by the illegitimate end of harassment, as evidenced by their

deletion of his recordings.

"Probable cause in the malicious abuse of process context is defined as a

reasonable belief, founded on known facts established after a reasonable pre-

filing investigation that a claim can be established to the satisfaction of a court or

jury. *The lack of probable cause must be manifest*." *Fleetwood*, 164 P.3d at 35

(emphasis added) (internal quotation marks omitted). The question is not whether

---

[12] The district court also discussed the possibility that the officers are absolutely immune under New Mexico law from a claim for malicious abuse of process, *see* N.M. Stat. Ann. §§ 41-4-4, 41-4-12, but the officers and City do not advance this theory on appeal.

there is probable cause for each and every claim in the complaint, but whether "the complaint as a whole" is justified by probable cause. *Id.* at 37.

Mocek claims that there was no probable cause, but his cursory arguments cannot establish that a lack of probable cause was "manifest" on the criminal complaint as a whole. He simply reasserts that there was no probable cause to *arrest* him.[13] But because there was at least arguable probable cause to arrest him for concealing identity, we cannot conclude that any lack of probable cause was manifest. In addition, even if there was no probable cause for the other three charges,[14] he nowhere argues that they rendered the complaint *as a whole* obviously devoid of probable cause. Likewise, he does not explain how the inclusion of the allegedly false statements vitiated probable cause for the entire complaint. His failure to develop an argument is especially fatal to a claim for a tort disfavored by the law. Because "[w]e will not manufacture arguments for an appellant," *Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1226 (10th Cir. 2001), we find no error in the district court's conclusions.

### b. *Procedural Impropriety*

---

[13] Mocek's briefing for malicious abuse of process simply refers to his Fourth Amendment section and states, "These facts also support Plaintiff's claim for abuse of process." Aplt. Br. at 46.

[14] The other charges were resisting an officer's lawful command, disorderly conduct, and criminal trespass.

Next, Mocek argues that the arrest itself was a malicious abuse of process because Officer Dilley's grounds for arrest were mere pretext for harassing him. Under this "procedural impropriety theory," a plaintiff can abuse legal process even in a meritorious case. *Fleetwood*, 164 P.3d at 38. But "improper motive by itself cannot sustain a malicious abuse of process claim." *LensCrafters, Inc. v. Kehoe*, 282 P.3d 758, 766 (N.M. 2012). A plaintiff must also show "the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge." *Id.* at 767 (internal quotation marks omitted). "A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt." *Durham*, 204 P.3d at 26.

Mocek identifies no misuse of procedure. He simply relies on a case in which the New Mexico Court of Appeals found that an arrest motivated by "revenge" could support a claim for malicious abuse of process. *See Santillo v. N.M. Dep't of Pub. Safety*, 173 P.3d 6, 14 (N.M. Ct. App. 2007). But *Santillo* raised numerous procedural improprieties in addition to the improper motive: the nature and timing of the arrest (which involved handcuffing a business-owner in front of her customers and confiscating the business's money and records, despite "ample testimony" from undercover officers that would have sufficed to prove that she made unlicensed sales), the fact that no bond was set, and the

prosecution's "[f]ailure to provide case materials for an extended period of time." *Id.* at 14. Because Mocek's brief does not point to anything procedurally improper, he has not shown that the arrest abused process.

### D. *Request for Leave to Amend the Complaint*

Finally, Mocek asks for permission to amend his complaint. In the district court he sought to add claims against the police defendants under the Fifth and Sixth Amendments of the federal Constitution. Although his request was procedurally improper, the court effectively permitted the amendment and ruled on the merits of the claims. Since there was no denial of a motion to amend in the district court, there is nothing to appeal. Of course, Mocek cannot ask us in the first instance for permission to amend the complaint; that must be done in district court. *See* Fed. R. Civ. P. 15(a)(2)

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's 12(b)(6) dismissal of Mocek's claims. We DISMISS Mocek's request to amend the complaint for lack of jurisdiction.